**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-3767

_____

EUGENE WOLSTENHOLME,
Individually and Derivatively on Behalf of Louisiana Composite
Technologies, Inc. and Its Subsidiaries,

Appellant

v.

JOSEPH BARTELS

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2:10-cv-05974)
District Judge:  Hon. Edmund V. Ludwig

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 15, 2013

Before:  SMITH, CHAGARES, and BARRY, Circuit Judges.

(Filed:  January 18, 2013)

_____

OPINION

_____

CHAGARES, Circuit Judge.

Eugene Wolstenholme ("Wolstenholme") appeals an order of the District Court

for the Eastern District of Pennsylvania dismissing his lawsuit against Joseph Bartels for

lack of personal jurisdiction. Wolstenholme first argues that the District Court abused its discretion by ruling on a motion to dismiss for lack of personal jurisdiction before a motion to remand for lack of subject-matter jurisdiction. Second, Wolstenholme argues that the District Court erred in granting the motion to dismiss. For the foregoing reasons, we will affirm the order of the District Court.

I.

Because we write solely for the benefit of the parties, we recite only the facts essential to our disposition. Wolstenholme, a retired businessman who previously owned a company that manufactured parts for aircraft and other machines, met Joseph Bartels ("Bartels"), an attorney, at an air show in Florida in or around 2000. Bartels informed Wolstenholme that he was interested in purchasing an experimental air kit business called Lancair International, Inc. ("Lancair"), and followed up with Wolstenholme in 2002 to see whether he was interested in becoming a partner and helping to finance such a purchase. According to Bartels, it was Eugene Wolstenholme's son, Bob Wolstenholme, who persuaded Bartels to seek funding for the acquisition of Lancair from Eugene Wolstenholme.

In February and May 2003, after Bartels and Wolstenholme executed an Operating Agreement to memorialize their agreement,[1] Wolstenholme sent cash installments to Bartels, and Bartels made arrangements to complete the purchase of Lancair. Bartels received advice that the purchase of Lancair should be structured as an asset acquisition

---

[1] The Operating Agreement declared that, if disputes could not be resolved by nonbinding mediation, "the Laws of the State of Louisiana [would] prevail," and the parties would "submit themselves to the jurisdiction of said courts." Appendix ("App.") 216.

and, furthermore, that he should accomplish that asset acquisition by means of a separate corporate entity. Bartels did so by incorporating Louisiana Composite Technologies, Inc. ("LCTI"), which would acquire Lancair as an asset, redistribute it to various reorganized corporate entities, and hold shares of stock in those entities. Pursuant to the Operating Agreement, forty percent of the shares in Lancair and related entities would be held for Wolstenholme by LCTI.

Later, in 2005 and 2006, Lancair saw diminishing sales and loss of market share. According to Bartels, this prompted him to redesign Lancair's product, purportedly consulting Bob Wolstenholme regularly on Eugene Wolstenholme's behalf as these decisions were being made. The cost of the redesign strained the corporation's resources so that, from 2006 to 2008, Wolstenholme made a series of loans to Lancair at Bartels's request. Bartels eventually gave up his position as chief operating officer, chairman, and president of Lancair. When Lancair's new management took over, it conducted an investigation of the corporation's expenses and operation under Bartels. Wolstenholme claims that, pursuant to this investigation, self-dealing and other acts by Bartels that damaged the corporation came to light.

Wolstenholme filed a lawsuit based on these claims in the Court of Common Pleas of Bucks County in Pennsylvania, where he resides and is a citizen. He brought suit on his own behalf, and on behalf of LCTI, a Louisiana corporation. Like LCTI, Bartels is a citizen of Louisiana, but he nevertheless removed the case to the District Court for the Eastern District of Pennsylvania, invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332. Bartels claimed that Wolstenholme fraudulently joined LCTI as a plaintiff in

3

order to defeat diversity jurisdiction.  Wolstenholme filed a motion to remand the case to state court for lack of federal subject-matter jurisdiction; on the same day, Bartels moved to dismiss the case for lack of personal jurisdiction.  Finding that the remand motion was complex, the District Court exercised its discretion to consider the motion to dismiss first, and held that it did not possess personal jurisdiction over Bartels.  This appeal followed.

II.

This appeal requires that we review the District Court's finding that it did not have jurisdiction over Wolstenholme's lawsuit — and, therefore, that we evaluate our own jurisdiction over the case as well.  In fact, both parties agree that we do not have jurisdiction over the case, but for different reasons.  Wolstenholme argues that the District Court abused its discretion by dismissing the case for lack of personal jurisdiction over Bartels before considering Wolstenholme's motion to remand to state court for lack of subject-matter jurisdiction.  He further argues that, even if the District Court did not abuse its discretion in this way, it nevertheless erred in finding no personal jurisdiction over Bartels in Pennsylvania.[2]  Bartels maintains that he has no minimum contacts with Pennsylvania that would allow a court located there to exercise its authority over him; accordingly, he argues, the District Court lacked personal jurisdiction over him.

---

[2] The distinction is significant because, "[i]f a federal court dismisses a removed case for want of personal jurisdiction, that determination may preclude the parties from relitigating the very same personal jurisdiction issue in state court."  Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 585 (1999).  However, as the Supreme Court has pointed out, "[i]ssue preclusion in subsequent state-court litigation . . . may also attend a federal court's subject-matter determination."  Id.

4

A.

In reviewing a district court's decision to rule on personal jurisdiction before subject-matter jurisdiction, we employ an abuse-of-discretion standard. Ruhrgas, 526 U.S. at 588. In Ruhrgas, the Supreme Court held that, although "subject-matter jurisdiction necessarily precedes a ruling on the merits," a federal court may nevertheless "choose among threshold grounds for denying audience to a case on the merits." Id. at 584-85. Accordingly, although "in most instances subject-matter jurisdiction will involve no arduous inquiry" and therefore should be decided upon first, where "a district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question, the court does not abuse its discretion by turning directly to personal jurisdiction." Id. at 587-88.

In the instant case, we hold that the District Court acted within its discretion when it elected to dispose of the personal jurisdiction question before reaching the question of whether or not it had subject-matter jurisdiction. Indeed, assessing the existence of subject-matter jurisdiction here would have involved more "arduous inquiry" than in a typical situation. Id. at 587. Specifically, as the District Court found, it would have involved determining "whether Wolstenholme has standing to make a derivative claim on behalf of LCTI by reason of transactions envisioned or undertaken pursuant to the Operating Agreement." App. 258 n.1. This would require consideration of the Pennsylvania statute governing derivative suits by shareholders, 15 Pa. Cons. Stat. Ann. § 1717, as well as Pennsylvania Rule of Civil Procedure 1506, which requires the

5

complaint in such an action to set forth "the efforts made to secure enforcement by the corporation or similar entity or the reason for not making any such efforts." Pa. R. Civ. P. 1506(a)(2). Accordingly, we hold that the District Court did not err in finding that these state-law issues were sufficiently complex to warrant exercising its established discretion to dispose of the personal jurisdiction issue first.

B.

Bartels argues before this Court, as he did below, that there is no personal jurisdiction over him in Pennsylvania because he is not a resident thereof and does not have the requisite minimum contacts. We review a district court's decision as to personal jurisdiction de novo; however, we review the district court's factual findings in connection with that determination for clear error. Telcordia Tech Inc. v. Telkom SA Ltd., 458 F.3d 172, 176 (3d Cir. 2006). Wolstenholme bears the burden of showing that personal jurisdiction over Bartels exists. See Marten v. Godwin, 499 F.3d 290, 295-96 (3d Cir. 2007) ("If an issue is raised as to whether a court lacks personal jurisdiction over a defendant, the plaintiff bears the burden of showing that personal jurisdiction exists.").

"A federal court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of the state." Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 144-45 (3d Cir. 1992). Pennsylvania's long-arm statute permits courts to exercise jurisdiction over nonresidents "to the fullest extent allowed under the Constitution of the United States," and also indicates that jurisdiction "may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. Ann. § 5322(b). Accordingly, the

6

exercise of personal jurisdiction over a nonresident is limited by the strictures of due process, which "require[] only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quotation marks omitted).

Personal jurisdiction may be exercised generally or specifically. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 & n.9 (1984). In the instant case, Wolstenholme concedes that "Joseph Bartels did not regularly conduct business in Pennsylvania sufficient to exercise general jurisdiction." Wolstenholme Br. 31. Instead, Wolstenholme claims that Pennsylvania has specific jurisdiction over Bartels because he "specifically targeted an elderly resident of Pennsylvania." Id. As we have previously explained, an inquiry into the existence of specific jurisdiction proceeds in three parts. O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007). First, we ask whether the defendant's activities were "purposefully directed" at the forum. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985). We then consider whether the litigation arises out of or relates to at least one of those activities. Helicopteros, 466 U.S. at 414. Finally, if we answer the first two parts in the affirmative, we consider the "traditional notions of fair play and substantial justice" underscored in International Shoe, 326 U.S. at 316.

Wolstenholme correctly points out that the complaint in this case alleges fraud, breach of fiduciary duty, and breach of the implied covenant of good faith and fair

7

dealing — intentional torts — and therefore invokes a "slightly refined version" of the specific-jurisdiction test we outlined in O'Connor.[3] 496 F.3d at 317 n.2. Specifically, consideration of jurisdiction over Bartels for the alleged intentional torts calls for application of the "effects test" first outlined by the Supreme Court in Calder v. Jones, 465 U.S. 783, 789-91 (1984). This Court's three-pronged effects test requires the plaintiff to show: (1) the defendant committed an intentional tort; (2) the forum state is the focal point of the harm suffered by plaintiff; and (3) the forum state is the focal point of the defendant's tortious activity, because the defendant expressly aimed its tortious conduct there. Marten, 499 F.3d at 297.

In applying this test, we have underscored that the scope of the law established in Calder is narrow, employing "a conservative reading" to reflect the fact that Calder did not "carve out a special intentional torts exception to the traditional specific jurisdiction analysis, so that a plaintiff could always sue in his or her home state." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 265 (3d Cir. 1998). Moreover, "the effects test prevents a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state if the defendant did not expressly aim his conduct at that state." Marten, 499 F.3d at 297. Therefore, "[o]nly if the 'expressly aimed' element of the effects test is met need we consider the other two elements." Id.

---

[3] Although Wolstenholme suggests that the standard for exercising specific jurisdiction "is relaxed to a certain extent" in the case of intentional torts, we have actually remarked that the intentional-tort context invokes the "more demanding relatedness requirement of the effects test." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 99 (3d Cir. 2004).

8

Like the District Court, we hold that Wolstenholme has failed to meet his burden of showing personal jurisdiction over Bartels because he has not satisfied the third prong of the effects test — that is, he has not shown that Bartels's allegedly tortious activity was "expressly aimed" at Pennsylvania. Wolstenholme argues that Bartels expressly aimed his allegedly tortious conduct at Pennsylvania because he knew that Wolstenholme lived there; because "all of the transactions were based on phone calls initiated by Bartels to Wolstenholme in Pennsylvania, as well as e-mails and faxes," Wolstenholme Br. 14; because the original Operating Agreement was sent to Pennsylvania for Wolstenholme's signature, id.; and because Bartels's alleged actions "caused Wolstenholme harm in Pennsylvania," id. at 35. This contact with an individual residing in Pennsylvania does not "insure[] that the defendant . . . ha[s] sufficiently directed his tortious conduct at the state to render him subject to personal jurisdiction there." Miller Yacht Sales, Inc., 384 F.3d at 99. Moreover, this contact with Wolstenholme does not "enhance defendant's contacts with the forum," IMO Indus., 155 F.3d at 265; rather, it constitutes Bartels's only contact with the forum. Therefore, these facts do not establish the required showing that Pennsylvania is the focal point of Bartels's activity. They fail to point to "some affirmative act 'by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Grand Entm't Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). Wolstenholme's residence in Pennsylvania is inconsequential to the case at issue, as Wolstenholme has failed to show that Bartels (a nonresident) and his alleged scheme (which concerned

9

transactions and companies outside of Pennsylvania) somehow benefited from Wolstenholme's living in Pennsylvania, or received some protection from that forum's laws.

In Grand Entertainment, a case on which Wolstenholme relies, we concluded that the exercise of personal jurisdiction was authorized because the nonresident defendant had directed at least twelve communications to the forum state while negotiating an agreement with individuals who resided in the forum state. Grand Entm't, 988 F.2d at 482. However, the existence of those communications alone was not dispositive in that case; we also held that the defendant's activities were "deliberately and personally directed . . . toward the state," and that those directed activities were "significant." Id. at 483. Most importantly, the agreement at issue in Grand Entertainment not only contemplated binding a citizen of the forum, but also "contemplated significant ties with the forum" itself. Id. In the instant case, the Operating Agreement created ties between Bartels and a resident of the forum; however, Wolstenholme's residence is the sole link to the forum, such that we cannot conclude that Bartels deliberately sought to invoke "the benefits and protections" of Pennsylvania's laws. Id. at 482.

IV

For the foregoing reasons, we will affirm the District Court's order dismissing the case for lack of personal jurisdiction over Bartels.

10