

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-22-2007

# Marten v. Godwin

Precedential or Non-Precedential: Precedential

Docket No. 05-5520

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Marten v. Godwin" (2007). *2007 Decisions*. Paper 495.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/495

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-5520
_____

CRAIG MARTEN,

Appellant,

v.

HAROLD GODWIN, JACK E. FINCHUAM, RONALD
REGAN, DAVID SCHOLEWBURGER, THE UNIVERSITY
OF KANSAS, AND JAMES KLEOPPEL

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 03-cv-06734)

District Judge: Honorable Petrese B. Tucker

Argued November 9, 2006

Before: SLOVITER, CHAGARES and GREENBERG, Circuit
Judges.

_____

(Filed:  August 22, 2007)


Stanley B. Cheiken (Argued)
261 Old York Road
Jenkintown, PA 19046

Counsel for Appellant

Steven K. Ludwig (Argued)
Fox Rothschild, LLP
2000 Market Street, Tenth Floor
Philadelphia, PA 19103

Counsel for Appellee

OPINION OF THE COURT

CHAGARES, Circuit Judge.

After being accused of plagiarism and expelled from an internet-based educational program, Craig Marten filed a complaint in the United States District Court for the Eastern District of Pennsylvania alleging defamation in violation of state law and retaliation in violation of the First Amendment pursuant to 42 U.S.C. § 1983. He appeals from an order of the District Court granting defendants' motion for summary judgment for lack of personal jurisdiction. Because Marten has not established that the nonresident defendants expressly aimed their conduct at Pennsylvania, we will affirm the District Court's dismissal of Marten's claims.

**I.**

The University of Kansas School of Pharmacy offers a Non-Traditional Pharm.D. (NTPD) Program in which licensed pharmacists can pursue advanced degrees. The course work for the program is completed online. Students communicate with their professors, who are primarily located in Kansas, by phone and email.

While living and working in Pennsylvania, Marten learned about the University of Kansas NTPD program from his coworkers. He visited the University of Kansas' website, which provided information about the program. Marten then submitted an application to the program and was accepted in August of 2001. He deferred the start of his course work until the following spring.

2

During the time Marten was enrolled, defendant Ronald Regan was Director of the program, defendant Harold Godwin was a professor, and defendant James Kleoppel was an associate clinical professor.[1] The defendants never visited Pennsylvania and never recruited Pennsylvania pharmacists to enroll in the University's program.

Marten communicated with his professors via email, frequently complaining about the grades he received. He sent email messages to defendant Regan, appealing disputes he had with professors. Marten also exchanged emails with Regan regarding concerns he had about the program's three-year time limit for completing course work.

Marten alleges he complained to a "Dean Sorenson" that Regan was not responding adequately to his complaints. Defendants assert that the School of Pharmacy does not have an administrator by the name "Sorenson." Shortly after purportedly speaking with Sorenson, Marten claims he received a call from Regan, in which Regan threatened to have Marten expelled from the NTPD program. According to Marten's Amended Complaint, Marten brought these threats to the attention of the University Ombudsman and the Better Business Bureau of Northeast Kansas.

The following fall, Marten took a course taught by defendant Kleoppel. The course required students to complete several written assignments. After reviewing one of Marten's assignments, Kleoppel accused Marten of academic misconduct because his assignment included text copied directly from a website without any indication that the language was not Marten's own. A few months later, Kleoppel alerted his colleagues that he received a second problematic assignment from Marten—this one appeared to include word-for-word passages from a reference book without quotation marks or

---

[1] Marten originally brought claims against two other University employees, Jack Finchuam and David Scholewburger, but those claims were terminated in the District Court and are not part of this appeal. The University of Kansas is named as a defendant under a theory of respondeat superior for the defamation claim.

proper citations. Following these two instances of suspected academic misconduct, Kleoppel recommended to Regan that Marten be expelled from the NTPD program. Regan agreed with Kleoppel's recommendation and he so informed defendant Godwin. Godwin also agreed and he forwarded his recommendation for expulsion to the Dean of the School of Pharmacy, Jack Finchuam. Soon thereafter, Dean Finchuam sent Marten a letter informing him that he was expelled from the NTPD program on the grounds of academic misconduct.

Marten filed a two-count complaint in the District Court for the Eastern District of Pennsylvania. He alleged defamation in violation of state law and retaliation in violation of the First Amendment pursuant to 42 U.S.C. § 1983. According to Marten's Amended Complaint, Kleoppel, Godwin and Regan retaliated against Marten because he complained about defendant Regan's conduct. Their retaliatory action allegedly consisted of making false accusations of plagiarism and then recommending his expulsion. Marten separately alleged defendants' accusations of plagiarism constituted defamation under state law.

Defendants filed a motion to dismiss the complaint for lack of personal jurisdiction. The District Court denied the motion without issuing an opinion. After discovery, defendants moved for summary judgment on the ground that the District Court lacked personal jurisdiction over the defendants. The District Court granted defendants' motion for summary judgment, explaining that Marten did not meet his burden to establish jurisdiction as he relied "on bare, unsubstantiated allegations without proffering evidence" of jurisdictional significance. Marten v. Godwin, No. 03-6734, 2005 WL 3307084, at *3 (E.D. Pa. December 6, 2005); see Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule [with sworn affidavits], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."); Connors v. Fawn Min. Corp., 30 F.3d 483, 489 (3d Cir. 1994).

## II.

4

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. We have jurisdiction to review the District Court's final order granting summary judgment pursuant to 28 U.S.C. § 1291.

In reviewing a grant of summary judgment we exercise plenary review and apply the same standard as the District Court. Jakimas v. Hoffmann-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007). Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).[2] Marten's evidence "is to be believed, and

---

[2] Dismissing a claim for lack of personal jurisdiction is more appropriately done by way of Rule 12(b)(2) of the Federal Rules of Civil Procedure, rather than Rule 56. A summary judgment order pursuant to Rule 56 "is a ruling on the merits which if affirmed would have preclusive effect." EF Operating Corp. v. Am. Bldgs., 993 F.2d 1046, 1049 (3d Cir. 1993). The District Court decided this case as a Rule 56 motion, but it is "clear from the district court's opinion [that] the claim has not been disposed of on the merits and is therefore only abated." Martucci v. Mayer, 210 F.2d 259, 260-61 (3d Cir. 1954) (considering a summary judgment motion based on lack of indispensable parties as a motion to dismiss); see 10A Charles Alan Wright, Federal Practice and Procedure, § 2713 ("In general, courts have ruled that summary judgment is an inappropriate vehicle for raising a question concerning the courts['] . . . personal jurisdiction . . . ."). Nevertheless, "[b]ecause this case comes to us . . . [as a] motion for summary judgment, we must assess the record under the standard set forth in Rule 56 of the Federal Rules of Civil Procedure." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 884 (1990); see Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990) ("If the defendant asserts in a Rule 56 motion that undisputed facts show the absence of jurisdiction, the court proceeds, as with any summary judgment motion, to determine if undisputed facts exist that warrant the relief sought.").

In any event, we exercise plenary review over the District Court's decision regardless of whether we treat it as a summary

all justifiable inferences are to be drawn in his favor." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

## III.

If an issue is raised as to whether a court lacks personal jurisdiction over a defendant, the plaintiff bears the burden of showing that personal jurisdiction exists. <u>Gen. Elec. Co. v. Deutz AG</u>, 270 F.3d 144, 150 (3d Cir. 2001). Pursuant to Rule 4(k) of the Federal Rules of Civil Procedure, "a federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." <u>See</u> <u>Provident Nat'l Bank</u>, 819 F.2d at 437; Fed. R. Civ. P. 4(k)(1)(A). In Pennsylvania, state law provides for jurisdiction "to the fullest extent allowed under the Constitution of the United States" and "based on the most minimum contact with [the] Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. Ann. § 5322(b).

The Due Process Clause of the Fourteenth Amendment requires that nonresident defendants have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945) (quotation marks and citations omitted). Having minimum contacts with another state provides "'fair warning'" to a defendant that he or she may be subject to suit in that state. <u>See</u> <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472 (1985) (quoting <u>Shaffer v. Heitner</u>, 433 U.S. 186, 218 (1977) (Stevens,

judgment order or a Rule 12(b)(2) dismissal. <u>See</u> <u>Pinker v. Roche Holdings Ltd.</u>, 292 F.3d 361, 368 (3d Cir. 2002) ("We review a district court's decision with respect to personal jurisdiction de novo."). And, even accepting Marten's allegations as true and construing disputed facts in his favor, as is the general practice in reviewing 12(b)(2) motions, we conclude that the District Court did not have jurisdiction over these defendants. <u>See, e.g.</u>, <u>Carteret Sav. Bank, F.A. v. Shushan</u>, 954 F.2d 141, 142 n.1 (3d Cir. 1992) ("[C]ourts reviewing a motion to dismiss a case for lack of in personam jurisdiction must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff.").

J., concurring in judgment)).

These basic due process principles are reflected in the two recognized types of personal jurisdiction. General jurisdiction exists when a defendant has maintained systematic and continuous contacts with the forum state. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 & n.8 (1984). Specific jurisdiction exists when the claim arises from or relates to conduct purposely directed at the forum state. See id. at 414-15 & n.9. Marten does not argue that the District Court had general jurisdiction over these defendants. Accordingly, we are only concerned with whether the court had specific jurisdiction. See Pennzoil Prods., 149 F.3d at 200-01 ("[N]o party in this case contends that there is a basis for general jurisdiction in Pennsylvania—so we are free to consider solely whether the alternative form of personal jurisdiction is present: specific personal jurisdiction.").

Determining whether specific jurisdiction exists involves a three-part inquiry. O'Connor v. Sandy Lane Hotel Co., Ltd., – F.3d –, – , 2007 WL 2135274, at *2 (3d Cir. 2007). First, the defendant must have "'purposefully directed' his activities" at the forum. Burger King, 471 U.S. at 472 (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)). Second, the plaintiff's claim must "arise out of or relate to" at least one of those specific activities. Helicopteros, 466 U.S. at 414. Third, courts may consider additional factors to ensure that the assertion of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476 (quoting Int'l Shoe, 326 U.S. at 320). Because this analysis depends on the relationship between the claims and contacts, we generally evaluate specific jurisdiction on a claim-by-claim basis. See, e.g., Remick v. Manfredy, 238 F.3d 248, 255-56 (3d Cir. 2001).

Marten does not argue that the defendants' contacts with Pennsylvania satisfy the traditional three-step analysis for specific jurisdiction. Instead, he relies on Calder v. Jones, 465 U.S. 783 (1984), to argue that the District Court had specific jurisdiction over these defendants based on the effects their Kansas conduct had in Pennsylvania.

In Calder, an entertainer living in California sued two residents of Florida for libel because of an article published in

the National Enquirer. The author and editor of the article were subject to jurisdiction in California based on the "effects" of their Florida actions in California. The Supreme Court explained that the defendants expressly aimed their intentional, tortious activity at California: "[T]hey knew [the article] would have a potentially devastating impact upon respondent. And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the National Enquirer has its largest circulation." Id. at 789-90. As a result, the Court concluded that defendants could "reasonably anticipate being haled into court" in California. Id. at 790 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. at 297; Kulko v. California Superior Court, 436 U.S. 84, 97-98 (1978); Shaffer, 433 U.S. at 216).

This Court has determined that Calder allows a plaintiff to demonstrate personal jurisdiction if he or she shows:

> (1) The defendant committed an intentional tort;
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

IMO Indus. v. Kiekert AG, 155 F.3d 254, 265-66 (3d Cir. 1998) (footnote omitted). If a plaintiff satisfies these three elements, known collectively as the "effects test," the plaintiff can demonstrate a court's jurisdiction over a defendant even when the defendant's "contacts with the forum alone . . . are far too small to comport with the requirements of due process" under our traditional analysis. Id. at 259.

The effects test and traditional specific jurisdiction analysis are different, but they are cut from the same cloth. Just as the standard test prevents a defendant from "be[ing] haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts," Burger King, 471 U.S. at 475 (citations and quotation marks omitted), the effects test prevents a defendant from being haled into a jurisdiction solely because the defendant

8

intentionally caused harm that was felt in the forum state if the defendant did not expressly aim his conduct at that state. See, e.g., Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 455 n.6 (3d Cir. 2003) (indicating the effects test is an alternative to "minimum contacts" analysis but declaring they both require a similar type of "intentionality" on the part of the defendant). Even if a defendant's conduct could cause foreseeable harm in a given state, such conduct does not necessarily give rise to personal jurisdiction in that state. "[T]he foreseeability that is critical to due process analysis is . . . that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen, 444 U.S. at 297.

Only if the "expressly aimed" element of the effects test is met need we consider the other two elements. See IMO Indus., 155 F.3d at 266. To establish that the defendant "expressly aimed" his conduct, the plaintiff has to demonstrate "the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." Id. at 266. If a plaintiff fails to show that the defendant "'manifest[ed] behavior intentionally targeted at and focused on' the forum," IMO Indus., 155 F.3d at 265 (quoting ESAB Group Inc. v. Centricut, Inc., 126 F.3d 617, 625 (4th Cir. 1997), the plaintiff fails to establish jurisdiction under the effects test. In Remick v. Manfredy, 238 F.3d 248 (3d Cir. 2001), for example, we dismissed a defamation claim for lack of jurisdiction even though we acknowledged that the defendant could have intentionally defamed the plaintiff and the plaintiff could have felt the bulk of the harm in the forum state. In that case, defendants sent plaintiff a defamatory letter that was read by plaintiff's Pennsylvania co-workers. Defendants also made defamatory statements to members of plaintiff's professional community. Remick, 238 F.3d at 259. We concluded that the plaintiff failed to establish jurisdiction over the defamation claim because plaintiff provided "no indication that the [defamatory] letter was targeted at . . . anyone in Pennsylvania other than [plaintiff]," and plaintiff did not assert that Pennsylvania had a "unique relationship" with plaintiff's professional community. See id.

Remick illustrates a simple point: a plaintiff's residence is

9

relevant to the "jurisdictional inquiry" insofar as "residence in the forum may, because of defendant's relationship with the plaintiff, enhance defendant's contacts with the forum." Keeton, 465 U.S. at 780. However, the state of a plaintiff's residence does not on its own create jurisdiction over nonresident defendants. Jurisdiction is proper when the state of a plaintiff's residence is "the focus of the activities of the defendant out of which the suit arises." See id.

## IV.

Applying these principles to Marten's defamation and retaliation claims, we conclude Marten has not carried his burden of establishing personal jurisdiction under the effects test. In particular, Marten has not shown with respect to either claim that defendants expressly aimed their conduct at Pennsylvania.

Marten alleges defamation, but nothing in the record indicates that defendants made defamatory statements or sent defamatory material to anyone in Pennsylvania (other than, perhaps, Marten). As illustrated by the dismissal of the plaintiff's defamation claim in Remick, where defendants aimed their defamatory statements is jurisdictionally significant. Remick, 238 F.3d at 259. Here, even if we were to assume the truth of all of Marten's allegations, and assume he felt the brunt of the harm in Pennsylvania, we still could not find jurisdiction. He failed to allege any specific facts showing a deliberate targeting of Pennsylvania. See IMO Indus., 155 F.3d at 265-66. Accordingly, Marten failed to show jurisdiction over these defendants for his defamation claim.

Marten has similarly failed to show jurisdiction over defendants for his retaliation claim. That claim rests on his allegation that he was falsely accused of academic misconduct and consequentially expelled because he exercised his First Amendment rights in complaining about Regan.[3] But even if we

_____

[3] Defendants do not dispute that personal jurisdiction for the retaliation claim can be analyzed under the effects test.

10

assume Marten felt the brunt of the harm in Pennsylvania,[4] he has utterly failed to persuade us that defendants expressly aimed their allegedly retaliatory conduct at Pennsylvania.

Marten relies on the fact that at the time of his expulsion he resided in Pennsylvania. At oral argument, his counsel asserted that Pennsylvania has jurisdiction over these nonresident defendants because IMO Industries instructs courts to focus on the place where a plaintiff has suffered harm and "[t]he constitutional harm in this case was felt where Mr. Marten resided, where Mr. Marten asserted his [First Amendment] rights." This misconstrues our analysis in IMO Industries. True, the effects test asks whether the plaintiff felt the brunt of the harm in the forum state, but it also asks whether defendants *knew* that the plaintiff would suffer the harm there and whether they *aimed* their tortious conduct at that state. See IMO Indus., 155 F.3d at 264 (explaining "the geographical locus of the harm caused" by an intentional tort is only part of the test).

In order to satisfy the effects test, a plaintiff alleging retaliation must show additional facts connecting the defendant to the forum state other than the plaintiff's location at the time of the retaliatory conduct. The elements of First Amendment retaliation include conduct by the defendant "sufficient to deter a person of ordinary firmness from exercising his constitutional rights," and "a causal link" between plaintiff's constitutionally

---

[4] The conduct at issue in the retaliation claim is a decision made in Kansas to expel Marten after he directed complaints from his residence in Pennsylvania to Kansas institutions. The location of the brunt of the harm caused by this alleged retaliation is not obvious. If the harm is the expulsion, the web-based nature of the educational program makes it difficult to determine the earth-bound location of that harm. If, on the other hand, the harm is the chilling of Marten's First Amendment rights, that harm might travel with him or exist in the location in which he exercised his rights (Pennsylvania). We do not need to tackle this thorny conceptual issue, as there is no jurisdiction over these defendants even if Marten suffered the brunt of the harm in Pennsylvania. See IMO Indus., 155 F.3d at 265 ("Calder requires more than a finding that the harm caused by the defendant's intentional tort is primarily felt within the forum.").

11

protected activities and the defendant's retaliatory conduct.  See, e.g., Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006).  A defendant can commit First Amendment retaliation without "expressly aiming" his conduct at the plaintiff's location, or even knowing where the plaintiff would be likely to suffer.  Thus, a plaintiff demonstrating residence in the forum state at the time of the retaliatory conduct does not necessarily meet the effects test.  Because Marten failed to show specific activity indicating the defendants "expressly aimed" their conduct at Pennsylvania, the District Court did not have jurisdiction over these defendants.  See IMO Indus., 155 F.3d at 256.

## V.

Marten has alleged only that defendants harmed him while he happened to be residing in Pennsylvania.  In suing nonresidents for defamation and retaliation, that is not enough to establish personal jurisdiction.  Because Marten has not shown defendants expressly aimed their conduct at Pennsylvania, we will affirm the District Court's grant of summary judgment.