John Sterling COLLINS, Appellant

v.

Marilyn L. CHRISTIE, Executor of Estate of Edwin Lloyd, Deceased; George M. Leader Family Corp. Trading as Country Meadows; Country Meadows Associates, LP; Country Meadows Associates, II, LP; Louis Scott Lipare; A Am Columbo, Do; Kelly Freed, M.D.; Lehigh Valley Hospital, Inc.

No. 08–3781.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) June 12, 2009.

Opinion filed: July 10, 2009.

Kevin L. Orloski, Esq., the Orloski Law Firm, Allentown, PA, Christine E. Munion, Esq., Francis R. Gartner & Associates, Blue Bell, PA, for Appellant.

Before: McKEE, HARDIMAN, and VAN ANTWERPEN, Circuit Judges.

OPINION

VAN ANTWERPEN, Circuit Judge.

On September 25, 2004, Appellee Louis Scott Lipare, a detective for the Bethlehem Township Police Department, arrested Appellant John Collins following allegations of abuse at Country Meadows

Nursing Home, the Bethlehem, Pennsylvania, nursing home where Collins worked as a certified nurse's assistant. After the prosecution dropped the criminal charges against Collins, he filed a complaint[1] asserting violations of his federal civil rights and a claim for malicious prosecution under state law. Collins now appeals from the District Court's order granting Lipare's motion for summary judgment. *See Collins v. Christie,* No. 06–4702, 2008 WL 2736418 (E.D.Pa. July 11, 2008).

## I.

The District Court had jurisdiction over Collins's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343 and over his state law claim pursuant to 28 U.S.C. § 1367. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons that follow, we will affirm the order of the District Court.

## II.

Because we write solely for the parties, we will address only those facts necessary to our opinion.

In September 2004, Appellant John Collins, an African American male, was employed as a certified nurse's assistant by Country Meadows. On September 24, 2004, Collins was working a 7:00 p.m. to 11:00 p.m. shift at Country Meadows, during which he was assigned to care for the residents of Room 21 in Building V, including Edwin Lloyd. Lloyd was ninety-two years old[2] and suffered from Alzheimer's disease and dementia. Country Meadows employees described Lloyd as paranoid and combative and noted that he regularly made racially derogatory comments about African Americans.

That night, as Collins helped Lloyd prepare for bed, Lloyd became agitated and stated that someone named "John" hit him. John Collins was the only male working the 7:00 p.m. to 11:00 p.m. shift in Building V of Country Meadows on September 24, 2004. Collins was also the only person named "John" working in Building V at the time, and he was wearing a name tag. Collins denies hitting Lloyd and asserts that Lloyd struck him.

Throughout the evening of September 24, 2004, and the morning of September 25, 2005, several Country Meadows employees checked on Lloyd. At approximately 9:30 p.m. on September 24, 2004, Nurse Tanya Rogers entered Lloyd's room, where she found him alert and responsive. Lloyd informed Rogers that a male nurse cursed at him and struck him in the chest. Rogers gave Lloyd antianxiety medication, prepared an incident report, and noted that she saw no marks or bruises on Lloyd's body and that he was breathing normally. Several hours later, Registered Nurse Diana Sawruk checked on Lloyd; she found him alert and complaining of chest pains. Lloyd repeated his claim that someone named "John" hit him. Sawruk did not observe any marks on Lloyd's chest.

At 7:15 a.m. on September 25, 2004, Justine Reuben, a nurse's aide, noticed that Lloyd was agitated and observed a protruding, purple area on his chest. Lloyd told her that "John" punched him in the chest. About one hour later, another nurse's aide, Madeline Velez, observed a large, red bruise on Lloyd's chest. Lloyd

---

**1.** Collins's complaint named several defendants, including Detective Lipare. The instant appeal concerns only the District Court's grant of Lipare's motion for summary judgment.

**2.** Edwin Lloyd is now deceased.

complained of chest pain to Velez and repeated his claim that "John" hit him. Linda Meyer, a licensed practical nurse, also observed Lloyd that morning; she found him covered in vomit and complaining that someone named "John" had struck him in the chest. Nurse Betty Jean Gunton also checked on Lloyd; she testified that she was the first person to observe markings on Lloyd's chest,[3] which she characterized as petechiae rashes.[4] After Lloyd reiterated his claim that "John" hit him in the chest, she performed a full body check on him with the assistance of Velez and Reuben. When Velez and Reuben lifted Lloyd from his recliner, he began vomiting a dark substance and collapsed.

Country Meadows then summoned an ambulance to take Lloyd to the emergency room at Lehigh Valley Hospital, where Adam Columbo, D.O., an emergency medicine resident, treated him. Dr. Columbo observed that Lloyd exhibited no signs of Alzheimer's disease and appeared alert and lucid. Lloyd told Dr. Columbo that an individual named "John" hit him. Dr. Columbo noticed that Lloyd had a chest injury and was experiencing difficulty breathing. He also detected vomit on Lloyd's clothing; lab tests revealed that this vomit contained blood. Dr. Columbo concluded that Lloyd's injury was consistent with his account of being hit in the chest. He ordered a chest x-ray and a CAT scan, which revealed rib fractures and pneumothorax. Dr. Kelly Freed, a diagnostic radiologist, reviewed Lloyd's CAT scan on September 26, 2004, and concluded he had a pneumothorax and a fracture of the right side of the seventh and eighth ribs.[5]

At approximately 9:40 a.m. on September 25, 2004, Bethlehem Township Police Officer Troy Abelovsky was dispatched to Country Meadows after receiving a call about an elderly man with chest pains. He interviewed Lloyd, who told him that he had been hit in the chest, and observed that Lloyd had a red mark on his chest. Abelovsky contacted Barbara Lissenden, the Assistant Director of Nursing at Country Meadows, to inquire into the identity of "John." Lissenden informed him that John Collins was an employee who was assigned to Lloyd's care the previous evening. Abelovsky then contacted Detective Louis Scott Lipare, who initiated an investigation into Lloyd's abuse allegations. He interviewed Edwin Lloyd; Barbara Lissenden; Nurse Gunton; Madeline Velez; Mark Gutekust, the charge nurse at Lehigh Valley Hospital; and Dr. Columbo. Based on these interviews, Detective Lipare began preparing an affidavit of probable cause to file criminal charges against John Collins. At 5:00 p.m. on September 25, 2004, Lipare contacted Collins and asked him to come to police headquarters, where he was arrested.

---

3. Gunton was not deposed in connection with this action. Her testimony is taken from her deposition in the wrongful death action brought by Lloyd's estate against Country Meadows.

4. As the District Court noted, "[p]etechiae rashes appear within an hour or two if caused by trauma, are different from a bruise, and have several causes besides trauma." A nurse's note recorded at 9:30 a.m. indicated that Lloyd suffered from petechiae rashes.

5. Following her initial review of the CAT scan, Dr. Freed's report did not indicate that she thought Lloyd's injuries were old or chronic, despite other x-rays showing that he previously fractured his ribs. Dr. Freed testified that, had she thought Lloyd's injury was old or chronic at that time, her report would have so indicated. As noted *infra*, at Collins's criminal trial, Freed revised her opinion. She determined that the fractures identified in her report on September 26, 2004, were actually old fractures. As a result, the criminal charges against Collins were dropped.

Collins was arraigned on charges of felony and misdemeanor aggravated assault. *See* 18 Pa. Cons.Stat. §§ 2701, 2702(a)(1). Lipare prepared the criminal complaint and affidavit of probable cause. He continued his investigation after Collins's arrest, interviewing several Country Meadows employees, each of whom said that Lloyd claimed that "John" hit him.

Collins's criminal trial was held in the Northampton County Court of Common Pleas from July 12, 2005, through July 14, 2005. On July 14, 2005, Dr. Kelly Freed revised her opinion as to the cause of Lloyd's injuries. Because the charges of aggravated and simple assault against Collins were based on medical information, Dr. Freed's revised opinion caused the prosecution to dismiss the charges due to insufficient evidence.

Following the dismissal of the criminal charges, Collins filed the suit that is the subject of the current appeal. As to Detective Lipare, Collins asserted four claims: (1) a violation of 42 U.S.C. § 1983 for false statements or omissions on the affidavit of probable cause, (2) a violation of 42 U.S.C. § 1981 for rushing to judgment based on Collins's race, (3) a violation of 42 U.S.C. § 1983 and 42 U.S.C. § 1985 based on a conspiracy between Lipare and Country Meadows to arrest Collins, and (4) malicious prosecution under Pennsylvania law. Lipare moved for summary judgment, and Collins conceded that summary judgment was appropriate as to his claims that Lipare violated 42 U.S.C. § 1981 by rushing to judgment based on Collins's race and that he violated 42 U.S.C. § 1983 and 42 U.S.C. § 1985 by conspiring with the nursing home to arrest Collins. On July 11, 2008, the District Court granted Lipare's motion as to the remaining two claims. This appeal followed.

## III.

We exercise plenary review over the District Court's grant of summary judgment and apply the same standard as the District Court. *Marten v. Godwin,* 499 F.3d 290, 295 (3d Cir.2007). "We may affirm the order when the moving party is entitled to judgment as a matter of law, with the facts viewed in the light most favorable to the non-moving party. Further, '[w]e may affirm the District Court on any grounds supported by the record.'" *Kossler v. Crisanti,* 564 F.3d 181, 186 (3d Cir.2009) (en banc) (quoting *Nicini v. Morra,* 212 F.3d 798, 805–06 (3d Cir.2000) (en banc)) (internal citation omitted) (alteration in original).

## IV.

### A. False Arrest

Collins contends that the District Court erred in granting summary judgment as to his 42 U.S.C. § 1983 claim of false arrest pursuant to an invalid warrant. To state a claim under § 1983, the plaintiff must demonstrate that the defendant deprived him of a constitutional right while acting under color of law. *Wilson v. Russo,* 212 F.3d 781, 786 (3d Cir.2000). Because it is undisputed that Detective Lipare acted under color of law, the relevant inquiry is whether he deprived Collins of a constitutional right—in this case, whether he violated Collins's Fourth Amendment right by arresting him without probable cause.

" 'Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.'" *Merkle v. Upper Dublin Sch. Dist.,* 211 F.3d 782, 788 (3d Cir.2000) (quoting *Orsatti v. New Jersey State Police,* 71 F.3d 480, 482 (3d Cir.1995)); *see also Hunter v. Bryant,* 502 U.S. 224, 228,

112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (noting that existence of probable cause is assessed by considering arresting officer's knowledge " 'at the moment the arrest was made' " (quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964))). Although the jury typically determines the existence of probable cause in a § 1983 case, *Montgomery v. De Simone,* 159 F.3d 120, 124 (3d Cir.1998), "a district court may conclude 'that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding' " and enter summary judgment. *Merkle,* 211 F.3d at 788–89 (quoting *Sherwood v. Mulvihill,* 113 F.3d 396, 401 (3d Cir. 1997)).

In *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court set forth a two-part inquiry for challenging the truthfulness of factual statements made in an affidavit of probable cause. *United States v. Yusuf,* 461 F.3d 374, 383 (3d Cir.2006). Under the *Franks* test, a plaintiff challenging the validity of an affidavit of probable cause must prove, by a preponderance of the evidence, "(1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause." *Sherwood,* 113 F.3d at 399 (citing, inter alia, *Franks,* 438 U.S. at 171–72, 98 S.Ct. 2674).

### 1. Reckless Disregard for the Truth [6]

Since *Franks,* this Court has established standards for what constitutes "reckless disregard for the truth":

In evaluating a claim that an officer both asserted and omitted facts with reckless disregard for the truth, we hold that: (1) omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know; and (2) assertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting.

*Wilson,* 212 F.3d at 783; *see also Yusuf,* 461 F.3d at 383.

Collins points to several omissions and one misstatement in Lipare's affidavit: (1) the failure to note that Edwin Lloyd was a ninety-two-year-old resident of a nursing home who had Alzheimer's disease and dementia, (2) the failure to note that Lloyd was partially blind, (3) the failure to note that Country Meadows' records did not substantiate the reference to previous disputes between Collins and Lloyd, (4) the failure to note a nurse's alternative diagnosis for the bruise on Lloyd's chest, (5) the failure to note the lack of injury to Lloyd's arm when referring to Lloyd's report that Collins repeatedly entered his room "to stop the bleeding" from his arm, (6) the failure to note that Lloyd fell on the morning of September 25, 2004, and (7) the erroneous description of Dr. Columbo as an attending physician rather than as a resident physician.

Considering these alleged omissions and misstatements in turn, *see Wilson,* 212 F.3d at 788, and viewing the facts in the light most favorable to Collins, Lipare acted in reckless disregard for the truth with

---

**6.** Collins makes no showing that any misstatements or omissions in Lipare's affidavit were made "knowingly or deliberately"; accordingly, the appropriate focus is whether any such misstatements or omissions were made "with a reckless disregard for the truth." *See Sherwood,* 113 F.3d at 399.

respect to some of these asserted omissions. Nevertheless, the District Court's grant of summary judgment was appropriate, because none of the omissions or misstatements were material to a finding of probable cause.

First, while the challenged affidavit failed to note that Edwin Lloyd was a ninety-two-year-old resident of a nursing home who suffered from Alzheimer's disease and dementia, it described him as "an elderly male" who lived at Country Meadows. No evidence suggests that Lipare knew of Lloyd's Alzheimer's disease and dementia when he completed the affidavit. Indeed, Lipare characterized Lloyd's mental state as "fine" after interviewing him, and several other witnesses informed Lipare that Lloyd was oriented and lucid when they spoke to him.

The affidavit also omitted reference to Lloyd's partial blindness, even though Lipare knew of this condition. Viewing the facts in the light most favorable to Collins, Lloyd's partial blindness constitutes information "in [Lipare's] ken that '[a]ny reasonable person would have known ... was the kind of thing the judge would wish to know,'" *Wilson*, 212 F.3d at 788 (quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir.1993)) (second alteration in original), because it implicates Lloyd's ability to observe his surroundings during the alleged incident with Collins. Although "[w]e cannot demand that police officers relate the entire history of events," *Wilson*, 212 F.3d at 787, a jury could conclude that the failure to note the partial blindness of the only witness to the alleged nighttime attack constituted a reckless disregard of the truth.

The affidavit also failed to note that no reports of past disputes between Lloyd and Collins had been recorded at Country Meadows, despite stating that Lloyd relayed past disputes with "John" in which "they would yell and scream foul language at each other." Lipare testified that, when he interviewed Madeline Velez, she informed him of the "bad blood" between Collins and Lloyd; thus the affidavit's reference to past fights was supported, and the failure to note the lack of corroborating records at Country Meadows was not reckless.

Lipare's affidavit did not refer to Nurse Gunton's diagnosis of the bruise on Lloyd's chest as a petechial rash. As Appellant's brief acknowledges, however, it is not clear that Lipare learned of this alternative diagnosis before completing his affidavit. Other witnesses interviewed by Lipare, including Dr. Columbo, asserted that Lloyd's injury was consistent with a punch, and Lipare testified that he also believed the mark was from a fist. Nevertheless, viewing the facts in the light most favorable to Collins, we assume that Lipare did know of this alternative diagnosis before preparing the affidavit; the existence of an alternative diagnosis constitutes information that a reasonable person would know that a judge would wish to know. Thus, a jury could conclude that the failure to include the alternative diagnosis demonstrated a reckless disregard for the truth.

Collins also contends that the affidavit omitted the fact that Lloyd's arm had no discernable injury when it stated that, after the alleged assault, "John kept coming in and out of [Lloyd's] room and at one point was pressing on his right arm ... to stop the bleeding." As the District Court observed, however, Lipare testified that, although Lloyd's right arm was not bleeding, "it looked like he had some type of an injury that may have been bleeding." Because Lipare testified that he did observe an injury on Lloyd's right arm, the failure of Lipare to note that no such injury existed did not constitute a reckless disregard for the truth.

Collins also argues that the affidavit's omission of an acknowledgment of Lloyd's fall on the morning of September 25, 2004, displayed a reckless disregard for the truth. As the district court noted, Lipare's Investigative Report indicates that Velez informed him that Lloyd "lowered" to his knees, and Lipare testified that he did not think Lloyd fell. Lipare's omission of such a statement from the affidavit did not display a reckless disregard for the truth.

Finally, Collins notes that Lipare's affidavit misstated Dr. Columbo's position. While the affidavit erroneously refers to Dr. Columbo as an attending physician rather than a resident physician, there is no indication that Lipare had "obvious reasons to doubt the truth of" his assertion. *See Wilson,* 212 F.3d at 788–89.

### 2. *Materiality*

Because there was sufficient evidence that some of the affidavit's omissions or assertions were made with reckless disregard for the truth, we examine whether these errors are material to the finding of probable cause. *See Franks,* 438 U.S. at 171–72, 98 S.Ct. 2674; *Sherwood,* 113 F.3d at 399. To determine the materiality of omissions or misstatements from an affidavit of probable cause, this Court must reconstruct the affidavit by inserting alleged omissions and excising alleged inaccuracies. This Court must then determine whether the reconstructed affidavit establishes probable cause. *See Wilson,* 212 F.3d at 789. If it does, the district court's grant of summary judgment was proper.

Even assuming that all the complained-of omissions and misstatements from Lipare's affidavit were corrected, the "reconstructed" affidavit would include Edwin Lloyd's assertion to Detective Lipare that an individual named "John" punched him in the chest; Lipare's assessment that

Lloyd was lucid on the morning of September 25, 2004; the reports of several witnesses that Lloyd told them that "John" struck him in the chest; medical evidence and testimony demonstrating that Lloyd's injuries were consistent with a punch to the chest, even if also consistent with other causes, such as a petechia rash; and the fact of John Collins's employment at Country Meadows and his assignment to care for the residents of Room 21 of Building V, including Edwin Lloyd, on the evening of September 24, 2004. On the basis of this "reconstructed" affidavit, the facts and circumstances in Detective Lipare's knowledge were "sufficient in themselves to warrant a reasonable person to believe that an offense" had been committed by Collins. *See Orsatti,* 71 F.3d at 483. Accordingly, the District Court did not err in concluding that probable cause existed as a matter of law because, viewing the evidence in the light most favorable to Collins, the evidence "reasonably would not support a contrary factual finding." *Sherwood,* 113 F.3d at 401.

### B. Malicious Prosecution

■ Under Pennsylvania law, a claim for malicious prosecution requires a showing that (1) the defendant initiated a criminal proceeding, (2) the criminal proceeding was resolved in the plaintiff's favor, (3) the proceeding was initiated without probable cause, and (4) the defendant acted with malice or for a purpose other than the pursuit of justice. *Merkle,* 211 F.3d at 791; *see also Kossler,* 564 F.3d at 186 & n. 2. The failure to satisfy any of these elements is fatal to the claim of malicious prosecution. *See Kossler,* 564 F.3d at 186 (observing that, in a claim for malicious prosecution under § 1983, plaintiff's failure to establish an element of claim "was fatal"). Because the District Court did not err in finding that Detective Lipare had

probable cause to arrest Collins on September 25, 2004, Collins's claim for malicious prosecution must fail.

Based on the foregoing, we will affirm the District Court's grant of Lipare's motion for summary judgment.

