**Daniel COOK, Appellant**

v.

**NEW CASTLE AREA SCHOOL DISTRICT; George Gabriel, Superintendent of New Castle Area School District; Fred Mozzocio, Former**

President of the Board of School Directors; Paul A. Fulena, Director of Buildings & Grounds of New Castle Area School District.

No. 09–1183.

United States Court of Appeals, Third Circuit.

Argued Oct. 28, 2009.

Opinion Filed: Nov. 23, 2009.

Jonathan Soloman, (Argued) New Castle, PA, for Appellant.

Diego Correa, John W. Smart, (Argued) Andrews & Price, Pittsburgh, PA for Appellees.

BEFORE: SMITH, FISHER and STAPLETON, Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

Appellant Daniel Cook filed this civil rights action in the Court of Common Pleas of Lawrence County, Pennsylvania, against the school district which employs him and several school officers. The defendants removed it to federal court and moved for summary judgment. Cook appeals from the order entering summary judgment in their favor.[1] We will affirm.

The following facts are presented in the light most favorable to Cook.

### I.

Twenty-three years ago, Cook began working for the New Castle Area School District ("School District"). In 2006, he was employed by the School District as a janitor. The School District is a municipal entity that is governed by nine elected officials. Defendant Fred Mozzocio ("Mozzocio") serves as one of those elected offi-cials and was president of the school board during the time period relevant to this litigation. He was reelected to the board in a 2007 election. Defendant George Gabriel ("Gabriel") is employed as the Superintendent of the School District, and defendant Paul Fulena ("Fulena") works as the District's Director of Building and Grounds.

In his off hours, Cook regularly participated in local elections by putting up yard signs, organizing campaign events, distributing literature, and working at the polls. In the spring of 2007, Cook volunteered for defendant Mozzocio's primary campaign for the school board position. The primary election was held in early May 2007, and Mozzocio received enough votes to proceed to the general election in November.

On May 31, 2007, the School District posted a notice for a new maintenance position and requested bids. Cook claims that Fulena called him before the job was posted and asked if he was likely to bid for it. Apparently Cook believed that if he expressed interest in the job, it would not be created, so he replied that he was not interested in the position. When the School District posted the job, however, Cook bid on it. According to Cook, Gabriel then called him to ask why he told Fulena he would not bid on the job. Cook responded that he believed that Fulena would not have created the job if he thought Cook would bid on it. In fact, Cook believed the maintenance position was actually created for David Colella, a custodian with less seniority than Cook. Cook claims that Mozzocio confirmed this belief in a telephone call. Gabriel hired Colella for the new position.

---

1. The complaint alleged a claim under 42 U.S.C. § 1983 and a claim under state law. The District Court's action with respect to the latter was without prejudice to its being refiled in state court. It is not currently before us.

In a June 7, 2007, letter, Gabriel informed Cook that he had denied Cook's bid for the maintenance position because neither his bid nor his personnel files showed that he was competent in carpentry or electricity, which the position required. Cook filed a grievance with his union pursuant to the Collective Bargaining Agreement ("CBA").

The grievance proceeded to the tripartite hearing required under the CBA. There, Cook presented evidence of his competency for the position for the first time. The School District objected to the use of this evidence because it was not presented during the bidding process, but the arbitrator allowed Cook to present it. In a decision rendered in Cook's favor on November 1, 2007, the arbitrator found that he had tendered sufficient evidence of his competency to perform the maintenance job.

Cook decided to support Mozzocio's opponents in the general election for the school board. As part of these efforts, Cook placed a large sign for one of Mozzocio's opponents in his sister's yard—which faced the School District's administrative office building.

On the day of the general election, November 6, 2007, Cook engaged in a casual conversation about the school board election in the school cafeteria with Jackie Trott, a School District cafeteria worker and childhood friend of Cook's. Cook states that he was on break at the time of the conversation, but the record does not establish whether Trott was also on break. Cook claims that Trott initiated the conversation by asking who his neighborhood was supporting in the school board election. Cook responded that he and the people in his neighborhood were supporting Mozzocio's opponents, the "girls." Trott informed Cook that she was planning on working the polls for Mozzocio that afternoon.

Trott apparently reported this conversation to Mozzocio or to someone who relayed its contents to Mozzocio. Shortly after the conversation, the principal of the school Cook worked in approached Cook and told him that Mozzocio had just called him. He informed Cook that Mozzocio had asked him to tell Cook that if Cook did not stop talking about Mozzocio and the election at work, Mozzocio would come to the school and that things might "get ugly." App. at 69–71, 81–82. Cook reported the principal's warning to his supervisors, Fulena and Gabriel. Cook was never disciplined for his conversation with Trott.

Cook began his new maintenance job the following Monday, November 12, 2007. His first thirty days were served on probation. While Cook was on probation, Cook claims that Mozzocio and Gabriel pressured his supervisor, Fulena, to find Cook incompetent or risk losing his own job. Cook maintains that Fulena responded to this pressure by assigning Cook tasks that were normally performed by two persons, and, thereby, setting him up to fail. However, Cook completed the tasks successfully, and Fulena determined at the end of the probationary period that Cook had proven himself competent to perform the job. Cook continues to hold his maintenance job with the School District.

## II.

■ Cook contends that his speech during his conversation with Trott constituted protected activity and that Mozzocio's reaction to that speech constituted retaliation which violated his First Amendment rights. The District Court concluded, however, that Cook's speech to Trott was not protected activity under the teachings of *Pickering v. Bd. of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). While the Court agreed that the topic of this conversation—the election of a public

official—was a matter of public concern, it held that the "defendants' interest in maintaining a functional workplace outweighs [Cook's] interest in having a casual discussion about a local School Board election with another school employee during working hours." App. at 22 (internal quotation marks and citation omitted).

We find it unnecessary to address the issue of whether this conversation constituted protected activity. We may assume, *arguendo*, that it was protected. "The elements of First Amendment retaliation include conduct by the defendant 'sufficient to deter a person of ordinary firmness from exercising his constitutional rights,' and 'a causal link' between plaintiff's constitutionally protected activities and the defendant's retaliatory conduct." *Marten v. Godwin*, 499 F.3d 290, 299 (3d Cir.2007) (quoting from *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006)). "[C]ourts have declined to find that an employer's actions have adversely affected an employee's exercise of his First Amendment rights where the employer's alleged retaliation acts were criticism, false accusations or verbal reprimands." *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003) (quoting from *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir.2000)). Mozzocio's response to the cafeteria conversation was at most a verbal reprimand.

### III.

■ Cook further argues that in retaliation for his supporting opposition candidates, the defendants (1) imposed the 30–day probation period, (2) threatened his supervisor with possible loss of his own job unless he found Cook incompetent during probation, and (3) sent him out alone on jobs usually assigned to two individuals.

The District Court correctly determined that Cook had shown no causal connection between his political activity and the 30–day probationary period. That probation-

ary period was dictated by the CBA which pre-dated the events in suit. Although Cook suggests that this CBA requirement was rendered inapplicable by the arbitrator's determination that he had tendered sufficient evidence of competence to secure the position, this is not a tenable position. The CBA requires both that a bidding employee "show evidence of competency" when making his bid and that he "demonstrate competency" during his first thirty days of employment in the new position. App. at 123.

■ The District Court also correctly pointed out that, even if it be assumed that Mozzocio and Gabriel exerted pressure on Fulena to find Cook incompetent, Fulena found Cook competent and that Cook continues to hold a better position now than he held before the events in suit. In short, no causal connection has been shown between the alleged pressure and harm to Cook.

■ Finally, the evidence Cook has tendered regarding his work assignments while on probation is simply insufficient to permit a trier of fact to find that those assignments had the required adverse impact upon him. Cook's evidence consisted of the affidavits of a school principal and three maintenance workers. The maintenance workers each averred in one or two sentences that they had not been asked to do jobs alone that they had observed Cook being asked to do alone. Absent from those affidavits is any description of the work assigned to Cook and any indication as to whether the affiants had skills and experience similar to that of Cook. The school principal averred only: "Maintenance men came to my building to change lights—Dan Cook was the first one that I saw do the work by himself." App. at 102.

The record contains no suggestion that the work assigned to Cook was in any way demeaning, that it was anything other than work a maintenance man would expect to

perform, or that Cook suffered any ill effects from his labors. Nor is there any indication that Cook was not given a reasonable time to complete his assignments alone. On the other hand, we do know that the assignments in issue were limited to the probationary period and that Cook successfully completed all of them.

Cook had the burden of proof on the issue of whether his work assignments while on probation were such that they could be expected to cause a person of reasonable firmness to cease supporting the candidates of his or her choice. Having been confronted with a motion for summary judgment and having failed to tender evidence sufficient to support a favorable finding on that issue, Cook cannot successfully complain about the entry of summary judgment against him. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252–56, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### IV.

The judgment of the District Court will be affirmed.