**Bruce MARKS and Marks, LLC d/b/a Marks & Solokov, LLC, Appellants**

v.

**ALFA GROUP a/k/a Crown Finance Foundation, Altimo Holdings & Investment Ltd., and Financial Dynamics Ltd.**

No. 09–2964.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Feb. 11, 2010.

Filed: March 12, 2010.

George A. Bochetto, Esq., Bochetto & Lentz, Bruce S. Marks, Esq., Thomas C. Sullivan, Esq., Maria Temkin, Esq., Marks & Solokov, Philadelphia, PA, for Appellants.

John G. Harkins, Jr., Esq., Eleanor M. Illoway, Esq., Harkins Cunningham, Philadelphia, PA, Ronald S. Rolfe, Esq., Cravath, Swaine & Moore, New York, NY, for Alfa Group, Altimo Holdings & Investment Ltd.

Kenneth T. Kline, Esq., Tara Tune, Esq., Cravath, Swaine & Moore, New York, NY, for Altimo Holdings & Investment Ltd.

Alexander Kerr, Esq., Lisa M. Salazar, Esq., McCarter & English, Philadelphia, PA, for Financial Dynamics Ltd.

Before: SLOVITER, ROTH and TASHIMA *, Circuit Judges.

## OPINION OF THE COURT

TASHIMA, Circuit Judge.

Appellants Bruce Marks and Marks, LLC d/b/a Marks & Solokov, LLC (together, "Marks"), appeal the District Court's dismissal of their complaint for lack of personal jurisdiction. We will affirm.[1]

## I.

This tale of international deception, revenge, and defamation begins in 2001, when Norex Petroleum Limited, a Russian oil company, filed suit against defendant Alfa Group, alleging that Alfa Group had conspired to take control of an oil company owned by Norex in violation of the federal Racketeer Influenced and Corrupt Organizations Act. *See Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146 (2d Cir. 2005). (App. 42 ¶ 23; *see also* App. 60–63.) According to the complaint in this matter, which we accept as true for purposes of this appeal, the Norex lawsuit resulted in substantial negative publicity for both Alfa Group and one of its owners. (App. 38 ¶¶ 2–3; App. 42 ¶¶ 24–25.)

Years later, defendant Altimo Holdings & Investment Ltd. ("Altimo"), a company allegedly controlled by Alfa Group, became embroiled in a dispute with Telenor, a Norwegian company, over a Ukranian telecommunications company jointly owned by Altimo and Telenor. *See Storm LLC v. Telenor Mobile Comm'ns AS*, 2006 WL 3735657 (S.D.N.Y.2006); *Telenor Mobile Comm'ns AS v. Storm LLC*, 524 F.Supp.2d 332 (S.D.N.Y.2007). (App. 38 ¶ 5; App. 43 ¶¶ 27–28.) This dispute, which has spawned litigation across the world, led to the defamatory statements at issue here.

Seeking to kill two birds with one stone—to gain the upper hand in the public relations battle and to extract revenge for the earlier lawsuits—Altimo sent a letter to Telenor and distributed copies to the press. (App. 43–46 ¶¶ 29–41; App. 65–118.) The letter purported to identify a number of "illegal and inappropriate activities of Telenor" that were directed at Altimo management. App. at 67. It accused Telenor of engaging in a subversive public relations campaign directed, at least in part, by Marks. (App. 67.) In addition, the letter attached two fabricated emails to support its accusations, one of which ap-

---

* Hon. A. Wallace Tashima, Senior Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

1. The District Court had subject matter jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

peared to have been sent by plaintiff Bruce Marks. (App. 77, 89.)

The Altimo letter was circulated to the press and was picked up by three Russian news organizations. (App. 48 ¶ 56.) Those organizations published to the internet articles repeating the allegations that at Telenor's request Marks had initiated a number of "ordered publications"—publications "obtained through bribery which appear[ ] as ... news article[s], usually false, designed to ... discredit a business competitor or blacken somebody's reputation." App. at 268 ¶ 6. (App. 123–37.)

Marks subsequently filed this diversity action in the Eastern District of Pennsylvania, seeking damages for defamation, commercial disparagement, intentional interference with prospective contractual relations, intentional infliction of emotional harm, and invasion of privacy, as well as injunctive relief. The district court dismissed the action, finding that it lacked personal jurisdiction over defendants.[2] (App. 1–16.) Marks filed this timely appeal. (App. 18–19.)

## II.

Marks bears the burden of establishing that the exercise of personal jurisdiction over defendants would be consistent with the Due Process Clause of the United States Constitution. *Marten v. Godwin,* 499 F.3d 290, 296 (3d Cir.2007); *see also* 42 Pa. Cons.Stat. Ann. § 5322(b). To meet his burden, Marks relies on the "effects test" from *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). We agree with the district court that Marks has not alleged facts sufficient to warrant the exercise of jurisdiction over defendants in this case.

We have consistently emphasized that *Calder* should be applied narrowly. *See,*

*e.g., IMO Indus. v. Kiekert AG,* 155 F.3d 254, 261–65 (3d Cir.1998) (agreeing with "[t]he majority of our sister circuits that [a narrow construction is most appropriate for] the application of *Calder* to business torts"); *Marten,* 499 F.3d at 297 (stating that, because "the effects test and traditional specific jurisdiction analysis ... are cut from the same cloth, ... the effects test prevents a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state"). At a minimum, Marks must allege facts that establish that defendants "expressly aimed" their conduct at Pennsylvania. *Marten,* 499 F.3d at 297; *IMO,* 155 F.3d at 265–66.

Marks' allegations on this point are insufficient. He alleges nothing more than that defendants knew he practiced law in Pennsylvania when they released the letter to the media. Knowledge of where an individual resides, however, is insufficient to establish jurisdiction, even with an intentional tort. *Marten,* 499 F.3d at 299 ("Marten has alleged only that defendants harmed him while he happened to be residing in Pennsylvania."); *IMO,* 155 F.3d at 266 ("While knowledge that the plaintiff is located in the forum is necessary to the application of *Calder,* ... it alone is insufficient to satisfy the targeting prong of the effects test.").

The factual allegations in Marks' complaint do not support Marks' conclusory allegations that defendants aimed their conduct at Pennsylvania. Marks does not allege that defendants attempted to have their news release published in Pennsylvania. Neither the news release nor the articles it spawned refer to Pennsylvania or Marks' practice there. Marks has not alleged that defendants distributed their news release to specific media organiza-

---

**2.** We review the District Court's dismissal for lack of personal jurisdiction *de novo. Telcor-* *dia Tech Inc. v. Telkom SA Ltd.,* 458 F.3d 172, 176 (3d Cir.2006).

tions based in Pennsylvania. To the contrary, the articles were published only by Russian news organizations in the Russian language. *Cf. Noonan v. Winston Co.,* 135 F.3d 85, 91 (1st Cir.1998) (noting fact that published material was in French suggested it was intended for a French audience). This is insufficient for a finding that defendants "expressly aimed" their conduct at the forum. *Marten,* 499 F.3d at 299; *IMO,* 155 F.3d at 266–68; *Remick v. Manfredy,* 238 F.3d 248 (3d Cir.2001); *see also Young v. New Haven Advocate,* 315 F.3d 256 (4th Cir.2002).

## III.

For the above-stated reasons, we will affirm the judgment of the District Court dismissing this case for lack of personal jurisdiction.