**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 12-3321 & 13-3877
_____

TERESA A. SCOTT,
                              Appellant

v.

PAMELA WELLINGTON LACKEY; EVAN LESLIE ADAMS;
DOES 1-50; JANICE MOLINA
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 1:02-cv-01586)
District Judge:  Honorable Christopher C. Conner
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 3, 2014

Before: CHAGARES, KRAUSE and SLOVITER, Circuit Judges

(Opinion filed:  October 10, 2014)
_____

**OPINION**
_____

PER CURIAM

        We write primarily for the parties, so we will refer to aspects of the lengthy

procedural history and the facts of this case only insomuch as the details inform our

analysis.  By way of introduction, it suffices to say that Teresa A. Scott sued the

defendants, Pamela Wellington Lackey ("Wellington") and Evan Leslie Adams,[1] relating

to an internet message-board dispute.

Adams is a Canadian citizen who is a professional actor (as well as a medical

doctor). At the time of the events described in Scott's complaint, Scott and Wellington

were, as the District Court observed, "two of Adams' most devoted fans." Wellington

also has moderated internet discussions related to Adams. In short, Scott (who used the

internet handle "Talking Dreams") claimed that the defendants spread defamatory

statements about her to participants in internet discussion groups.

Adams won summary judgment after arguing that the District Court lacked

personal jurisdiction over him.[2] A jury returned a verdict for Wellington on all claims.[3]

After the District Court denied Scott's timely filed motion for a new trial, Scott appealed

(C.A. No. 12-3321). Scott subsequently filed a motion to vacate the judgment in the

District Court case. The District Court denied the motion. Scott filed an appeal from that

order, too (C.A. No. 13-3877). We have consolidated her appeals for disposition.

Scott argues that the District Court's judgment in favor of Adams is void, a

violation of her right to due process, and a result of the application of the wrong

standards and improper analysis. She further contends that the District Court erred by

denying her Rule 60(b)(4) motion for relief from a void judgment (and she asks us to

---

[1] The suit initially included another named defendant and many Doe defendants, all of whom were dismissed. However, those dismissals are not at issue in this appeal.

[2] We realize that the nature of the District Court's ruling on Adams's motion for summary judgment is in dispute, and we will address the matter.

[3] We should specify that the jury returned a verdict in favor of Wellington on all claims that were tried. As the parties know, the claims were winnowed down in motions practice, but decisions in the earlier stages of the action against Wellington are not among the issues on appeal.

summarily vacate that order). Regarding the judgment in Wellington's favor, Scott contends that the District Court erred in denying a motion for judgment as a matter of law and in denying her motion for a new trial.[4]

We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the order granting summary judgment is plenary (we apply the same standard as the District Court). See Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007). We also exercise plenary review over orders granting or denying relief under Rule 60(b)(4). See Budget Blinds, Inc. v. White, 536 F.3d 244, 251 n.5 (3d Cir. 2008). We consider whether a motion for judgment as a matter of law should have been granted under the same standard employed by the District Court; it should have been granted "only if, viewing the evidence in the light most favorable to the nonmoving party, there is no question of material fact for the jury and any verdict other than the one directed would be erroneous under the governing law." See McGreevy v. Stroup, 413 F.3d 359, 364 (3d Cir. 2005). The District Court's ruling on the motion to grant a new trial is reviewed for abuse of discretion (unless the ruling was based on the application of a legal precept). Blancha v. Raymark Indus., 972 F.2d 507, 512 (3d Cir. 1992).

We first consider the nature and propriety of the judgment in favor of Adams. The District Court entered judgment "in accordance with the court's memorandum and order (Doc. 345) dated January 20, 2010." ECF 451. In the referenced memorandum and order, the District Court explained that it was granting summary judgment because "the

---

[4] We have considered the entirety of Scott's overlength briefs and grant her motions for leave to file them although we note that such motions are disfavored.

3

exercise of personal jurisdiction [was] inappropriate." ECF 345 at 1. The District Court considered the evidence in the summary judgment record, rejected the arguments regarding an agency relationship between Adams and Wellington as the basis for personal jurisdiction, and, regardless of whether there was an agency relationship or not, ruled that it did not have jurisdiction over Adams under the Calder effects test (based on Calder v. Jones, 465 U.S. 783, 788-90 (1984)). At that point, the District Court concluded that "it [was] without personal jurisdiction over Adams," and stated that "Adams' motion for summary judgment will therefore be granted on all claims which Scott presses against him." ECF 345 at 26. In the order accompanying the District Court's memorandum, the District Court ordered that "Adams' motion . . . for summary judgment is GRANTED," and directed the Clerk of Court "to defer the entry of judgment on these claims in favor of defendant Evan Adams and against plaintiff Teresa Anne Scott until the resolution of all claims." ECF 345 (order page). In response to a later challenge by Scott to the judgment, the District Court examined its order and concluded that the order "determined [that the District Court] was without personal jurisdiction over Adams, and, as a result, granted Adams's motion for summary judgment." ECF 493 at 2.

The District Court's judgment in favor of Adams is not without ambiguity. At points, it seems that the District Court suggested that it was awarding Adams relief on the merits of the claims against him. Nonetheless, given the District Court's analysis in the body of its memorandum and its interpretation of its own order, we conclude that the District Court considered only the issue of personal jurisdiction in its ruling and did not

4

reach the merits of the claims against Adams.  The District Court essentially dismissed the case as to Adams, albeit by atypical vehicle.  See Marten, 499 F.3d at 295 n.2 (explaining that a "[d]ismissing a claim for lack of personal jurisdiction is more appropriately done by way of Rule 12(b)(2) of the Federal Rules of Civil Procedure, rather than Rule 56").  As in Marten, where it was clear that a claim had been dismissed for lack of personal jurisdiction after the District Court had considered the matter under Rule 56, we assess the dismissal decision on the summary judgment record and under the Rule 56 standard.  See id.

Because we conclude that the District Court did not reach the merits of Scott's claims as to Adams, we reject Scott's arguments that the judgment is void as a merits decision in the absence of personal jurisdiction.  We also disagree with Scott that the District Court improperly converted Adams's motion into a motion for summary judgment without providing proper notice (and due process); Adams clearly identified his motion as a motion for summary judgment and presented it as such.[5]  See ECF 302, 303, & 304.  Because these arguments that we reject were also the bases of Scott's Rule 60(b)(4) motion in the District Court, we conclude that the District Court did not err in denying that motion.  We deny Scott's motion to summarily vacate the District Court's order denying Rule 60(b)(4) relief.

We turn to the order dismissing Adams for lack of personal jurisdiction.  The District Court concluded that there was no genuine issue of material fact regarding

---

[5] We further note that Scott treated it as such, filing a lengthy response that included hundreds of pages of exhibits in opposition to summary judgment.  See ECF 316, 317, 318, 319, 320, 321, 322, 323, 324, 325, 326, 327, 328, & 329.

5

whether Wellington was his agent.[6] Scott attacks this conclusion as a violation of her right to due process on the basis that she had no notice that the issue of agency would be considered in the decision about personal jurisdiction. However, her claim of lack of notice is belied by the record. Adams specifically discussed agency principles in the brief supporting his motion. See ECF 303 at 15-19.

We further conclude that the District Court did not err in ruling that it lacked personal jurisdiction over Adams, in part because there was no evidence of an agency relationship between Adams and Wellington on the record before it. A district court can exercise personal jurisdiction over a non-resident defendant only "to the extent permissible under the law of the state where the district court sits." N. Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 689 (3d Cir. 1990). Pennsylvania law allows personal jurisdiction over a person who acts directly or through an agent to cause a harm or tortious injury by an act or omission in Pennsylvania or to cause harm or tortious injury in Pennsylvania by an act or omission outside Pennsylvania. 42 Pa. Cons. Stat. § 5322(a)(3) & (4). Also, Pennsylvania has authorized jurisdiction coextensive with that allowed under the Due Process Clause of the United States Constitution. 42 Pa. Cons. Stat. § 5322(b). Due process requires that the defendant have "minimum contacts" with the forum state, and that the exercise of jurisdiction comport with "traditional notions of fair play and substantial justice." Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

---

[6] Contrary to Scott's claim, the District Court applied the ordinary standards for summary judgment to Adams's motion after Scott had notice and an opportunity to respond.

A district court may exercise either general or specific jurisdiction over a defendant for purposes of personal jurisdiction.[7] <u>Remick</u>, 238 F.3d at 255. The plaintiff bears the burden of establishing, through sworn affidavits or other competent evidence, that personal jurisdiction can be exercised. <u>Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros.</u>, 983 F.2d 551, 554 (3d Cir. 1993).

Whether a forum may assert specific jurisdiction over a non-resident defendant depends on "the relationship among the defendant, the forum, and the litigation." <u>Walden v. Fiore</u>, 134 S. Ct. 1115, 1121 (2014) (citations and quotation marks omitted). For the exercise of jurisdiction to be consistent with due process, "the defendant's suit-related conduct must create a substantial connection with the forum State." <u>Id.</u> The relationship must "arise out of contacts the defendant *himself* creates." <u>Id.</u> at 1122 (citation and quotation marks omitted). Even in the context of an intentional tort, "random, fortuitous, or attenuated contacts" or the "unilateral activity of a plaintiff" do not establish a basis for personal jurisdiction. <u>Id.</u> at 1123 (citation and quotation marks omitted). "A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." <u>Id.</u> When a defendant commits an intentional tort, expressly aiming it at the forum and knowing that the brunt of the injury would be suffered in the forum, and the forum is the focal point of the harm suffered by plaintiff as

_____

[7] Because the District Court clearly could not exercise general jurisdiction over Adams, and Scott does not claim to the contrary, we will not discuss it further.

a result of that tort, specific jurisdiction lies. See IMO Indus. v. Kierkert AG, 155 F.3d 254, 261 (3d Cir. 1998) (describing and applying the Calder effects test).

The statements at issue at the summary judgment stage were private e-mail messages that Wellington, not Adams, sent to another member of the internet discussion group (Annie Nordbo).[8] Wellington is from Pennsylvania; Nordbo lives in Norway. No evidence was presented that Adams sent messages himself or made defamatory comments to Wellington or otherwise directed an intentional tort at the forum.[9] Scott insists that an e-mail that she attached to her second amended complaint (as Exhibit 27) that was written by Adams to Nordbo served as evidence of Adams's intentional tortious activity in the forum. First, that e-mail was sent to Nordbo in Norway. However, because Wellington wrote Nordbo to say that Adams had sent her a copy of it (Exhibit 28 of the second amended complaint), Scott relies on the e-mail to Nordbo (or, rather, the copy sent to Wellington) as proof of intentional tortious behavior in Pennsylvania. However, as the District Court concluded, the e-mail can neither be read as defamatory nor as a ratification (as Scott describes it) of others' writings or acts. In the message itself, Adams did not malign Scott; instead, he expressed a desire not to talk about

---

[8] Ultimately, a jury found that the messages were not defamatory.

[9] In a reconsideration motion filed almost two and a half years after the District Court made its ruling, Scott produced an e-mail written by Adams that Wellington had found. In it, Adams describes his interactions with Talking Dreams. Among other things, he stated that Scott had sent "sexually explicit, inappropriate, and what [he] felt to be mentally unbalanced, letters." He also asked Wellington if she knew of erotomania and stated that Talking Dreams had been extremely inappropriate with him, that she had described sexual acts to him, and that she was imagining a relationship with him. ECF 401-1. Scott asserts that this letter created a genuine issue of material of fact regarding whether Adams directed tortious acts to the forum. We conclude that the District Court did not err in denying reconsideration. Even if the District Court would have had personal jurisdiction over Adams relating to a claim about that letter, it would not serve as a basis for reconsideration of the District Court's ruling on personal jurisdiction regarding the other claims based on statements by Wellington that were in the second amended complaint. See Remick, 238 F.3d at 255 (explaining that personal jurisdiction is claim specific).

8

Talking Dreams. Specifically, he wrote, "I have no desire to discuss 'Talking Dreams' with anyone other than Pam Wellington and Liz Kelso, whom I know and trust. I do not wish to discuss this issue with 'Talking Dreams', a lawyer, or anyone else who feels they are affected by these goings-on." ECF 215 at Ex. 27. Otherwise, he told Nordbo not to write to him at the medical clinic address she had used; he asked that no one interfere on his behalf with Talking Dreams; and he stated that he refused to be drawn into any "lurid discussion over 'Talking Dreams' unsolicited, unwanted attention." Id.

Also, Scott did not controvert Adams's evidence that Wellington was not his agent.[10] Without repeating it, and after considering all of the material submitted at the summary judgment stage, we adopt the District Court's analysis of Pennsylvania law and its conclusions that an agency relationship was not shown. Ultimately, at best, there was evidence in the record that Adams and Wellington were friends. Even if it could be said, taking all the facts and all reasonable inferences in Scott's favor, that Wellington had some authority to provide information about Adams's career in the discussion group or that the group was somehow "official" or an approved place for discussion (created by someone other than Wellington), there is no proof that Wellington acted as an agent generally, in her role as co-moderator of the discussion board, or in writing the private e-mails at issue. Contrary to Scott's arguments, that e-mail Adams wrote to Nordbo did not give Wellington "carte blanche" to act as Adams's representative. In addition to the e-mail, Scott relies on trial testimony to make her arguments regarding agency. Without

---

[10] Scott is mistaken when she asserts that she "only needed to produce prima facie evidence of agency," Appellant's Brief at 60, at the summary judgment stage.

commenting on the import of the testimony she cites, we note that we evaluate the matter on the record that was before the District Court at the time the summary judgment motion was considered. And, on that record, the District Court did not err in concluding that it was without personal jurisdiction over Adams.

We now turn to Scott's claims regarding the judgment in favor of Wellington. Scott states that the District Court "erred in denying her motion for judgment as a matter of law." A motion for judgment as a matter of law may be made before a case is submitted to a jury after a party has been fully heard on an issue during a jury trial. See Fed. R. Civ. P. 50. Before trial began, Scott filed a document (ECF 416) in which she objected to affirmative defenses that Wellington presented in her pre-trial memorandum. Scott describes that filing as a motion for judgment as a matter of law. The District Court, grouping it with other pending motions and objections, stated that it would be resolved at trial. To the extent that Scott sought judgment as a matter of law, her motion was premature; she could not win that relief at that point. Otherwise, we conclude that the District Court committed no error in declining to rule before trial about what evidence Wellington should be permitted to present in defense of the defamation case. Although Scott argues to the contrary, the District Court also did not err by declining to consider sua sponte the earlier filed document as a motion for judgment as a matter of law at the close of the evidence.

Scott also contends that the District Court should have granted her motion for a new trial. The District Court's power to grant a new trial is limited to those

10

circumstances where a miscarriage of justice would result or the verdict is contrary to the weight of evidence.  See Olefins Trading, Inc. v. Han Yang Chem. Corp., 9 F.3d 282, 289 (3d Cir. 1993) (citation omitted).   The District Court, after presiding over the trial and observing the witnesses, rejected Scott's claim (repeated on appeal) that the verdict was against the weight of the evidence.  We conclude, after reviewing the transcript of the four-day trial, that the District Court did not err in doing so; as the District Court noted, the jury ultimately resolved a credibility dispute against her.

Scott repeats a complaint (that she also included in her motion for a new trial) about the admission of the "birthday tape."  She previously sought to keep the tape, in which she left several rambling messages for Adams, which, at points, included sexual content, from the jury through a motion in limine.  However, the District Court did not abuse its discretion in ruling that the information in that tape was relevant.  Scott presents objections about the jury charge, but that claim is waived because Scott explicitly stated that she had no objections to the charge before it was issued.  ECF 486, N.T. 7/12/12, at 30-33.  Lastly, we conclude that the District Court's decision to enter judgment as a matter of law on the civil conspiracy claim was correct for the reasons the District Court set forth on the record.  Id. at 28-30.

For these reasons, and because we conclude that this consolidated appeal is otherwise without merit, we will affirm the District Court's judgments.[11]

---

[11] As we noted above, we grant Scott's motions for leave to file overlength briefs, and we deny her motion for summary action.